**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                           No. 98-4304

DANIEL W. HUGHES,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-97-135)

Submitted: January 5, 1999

Decided: January 22, 1999

Before MURNAGHAN, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hunt L. Charach, Federal Public Defender, Brian J. Kornbrath, Assis-
tant Federal Public Defender, Charleston, West Virginia, for Appel-
lant. Rebecca A. Betts, United States Attorney, Philip J. Combs,
Assistant United States Attorney, Charleston, West Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Daniel W. Hughes was convicted pursuant to his guilty plea of being a felon in possession of a firearm. On appeal, he challenges the district court's order denying his motion to suppress evidence seized during his arrest for trespassing.[1] Specifically, Hughes alleges that officers did not have probable cause to arrest him for trespassing because he did not have notice that he was not allowed on the property in question. Finding no reversible error, we affirm.

In May 1997, police and security officers, working in conjunction with the Charleston, West Virginia, Housing Authority, observed Hughes on the grounds of a housing project managed by the Housing Authority. The officers recognized Hughes as someone who had state and federal drug convictions and numerous traffic citations. Suspecting that Hughes might not be allowed on the property, the officers called for confirmation and found that Hughes was on the "No Trespassing List ("the list")."[2] After a brief pursuit, police arrested Hughes for trespassing and conducted a routine search of his person. During the search, police seized a firearm and a small amount of drugs.[3]

Prior to trial, Hughes filed a motion to suppress the firearm and the

_____

[1] Hughes reserved the right to raise this issue as part of his guilty plea.
[2] This list is compiled and updated regularly by the Housing Authority and contains a list of persons who are prohibited from being on Housing Authority property because the Housing Authority considers them a threat to tenants' safety. People on the list are subject to immediate arrest for trespassing if they are found on Housing Authority property. It is undisputed that Hughes' name was on this list because of his prior drug convictions.
[3] It is undisputed that Hughes had a prior felony conviction and that he possessed the firearm.

2

drugs, alleging that the police lacked probable cause to arrest him for trespassing. Specifically, Hughes argued that West Virginia law requires that a person be notified that he is not allowed on the subject property before he can be charged with trespassing. **4** Hughes claimed that the police lacked probable cause to arrest him because he never received notice that he was on the list.

We review for clear error factual determinations made at a suppression hearing, while legal conclusions are reviewed de novo. See United States v. Han, 74 F.3d 537, 540 (4th Cir.), cert. denied, 517 U.S. 1239 (1996). We employ a "totality of the circumstances" test to determine whether the police had probable cause to arrest Hughes. See Illinois v. Gates, 462 U.S. 213, 230-31 (1983).

We find Hughes' reliance on the notice requirement of the statute misplaced. Such an argument might be persuasive in a state court challenge to the sufficiency of the evidence used to obtain a trespassing conviction, but it is irrelevant to the issue before us. The issue here is simply whether the police had probable cause to arrest Hughes for trespassing, and we find that they did. The record shows that Hughes was well known to the officers. Based on this prior contact and their knowledge of the purpose of the list, the officers had ample reason to suspect that Hughes was not permitted on Housing Authority property. They arrested Hughes only after confirming their suspicions. The record further shows that prior to Hughes' arrest, police had arrested 151 other people for trespassing based on their names being on the list, and there was never a challenge to the validity of the list or dismissal due to lack of notice. As a result, we find that the officers had no reason to suspect such a problem in Hughes' case.

Even assuming, as Hughes would like us to do, that the Housing Authority's knowledge should be imputed to the arresting officers, we still find no lack of probable cause. The record shows that Housing Authority officials mailed a letter to Hughes' mother in 1991, following his federal drug conviction, stating that Hughes must vacate her apartment or she would be evicted. The letter further stated that Hughes would be placed on the list, that he would be subject to arrest for trespassing if he was found on Housing Authority property, and

_____

**4 See** W. Va. Code § 61-3B-3 (1997).

3

that he would receive a notice to this effect. Although the Government stipulated that it could not prove that such notice was actually mailed to Hughes, there was also no evidence that it was not. Moreover, we find that it was reasonable for the Housing Authority to have a good faith belief that Hughes was aware that he was on the list since he and his mother were evicted from their apartment for failure to comply with the Housing Authority's letter.

Accordingly, we affirm Hughes' conviction and sentence and the district court's denial of Hughes' motion to suppress. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

4